UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BIOTRONIK, INC., an Oregon
Corporation; and PAUL V.
WOODSTOCK,

        Plaintiffs,

  v.

ST. JUDE MEDICAL S.C., INC.,
a Minnesota corporation,

        Defendant.

Case No. 3:12-cv-445-AA
OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiffs filed suit in state court seeking a declaration regarding the scope of plaintiff Paul Woodstock's post-termination obligations to defendant St. Jude Medical S.C., Inc. (St. Jude), his former employer. St. Jude removed the action to federal court pursuant to 28 U.S.C. §§ 1332 and 1441, alleging jurisdiction based on diversity of citizenship and the amount in controversy. Plaintiffs now move for remand pursuant to 28

1 - OPINION AND ORDER

U.S.C. § 1447, arguing that they seek only declaratory relief and do not allege the threshold amount in controversy necessary to establish diversity jurisdiction. St. Jude opposes the motion for remand and moves to dismiss or to transfer the case to the District of Minnesota on grounds of improper venue. The motion to remand is denied and the motion to dismiss is granted.

## BACKGROUND

Plaintiff Biotronik, Inc. (Biontronik) is an Oregon corporation doing business in the State of Oregon, and Woodstock is a resident of the State of New York. St. Jude is a Minnesota corporation with its principal place of business in Texas.

Biotronik and St. Jude are competitors in the sale and marketing of cardiac rhythm management (CRM) devices. CRM devices use electrical pulses to treat improperly beating hearts and other cardiac conditions. According to Biotronik's complaint, the market for CRM devices is very competitive and the devices are technologically complex. As such, the people who sell and manage the sale of these devices must be skilled salespeople and managers with technical and clinical knowledge of the devices. Accordingly, both Biotronik and St. Jude require their sales representatives and managers to sign employment agreements that include post-termination noncompetition, confidentiality, and non-solicitation obligations (Post-Termination Obligations).

2 - OPINION AND ORDER

In 2007, Biotronik and St. Jude entered into a Settlement Agreement that required the parties to provide forty-eight hours written notice of any intended lawsuit or claim "against each other or their respective employees, agents, or independent representatives." Compl. ¶ 10. If the parties are unable to resolve the dispute within forty-eight hours, "the party providing notice of the claim shall file the action necessary to resolve the claim if so desired." Id.

Plaintiffs also allege that Biotronik and St. Jude entered into an "informal agreement" regarding noncompetition disputes. Under this alleged agreement, "only those [accounts] which the employee called upon or supported four or more times during their last year of employment will be included as non-compete accounts." See Compl. Ex. 1 (email communications between Biotronik and St. Jude representatives).

Woodstock was one of St. Jude's highest-ranking executives and one of four Division Vice Presidents. During his employment with St. Jude, Woodstock signed an Employee Agreement that included Post-Termination Obligations regarding solicitation. Specifically, Woodstock's Employee Agreement provided:

> 7.1 For a period of one year (which I agree is a reasonable period of time) after my employment ends for any reason, I will not in any direct or indirect way, for myself or on behalf or along with any third party, do any of the following:

> 7.1.1   Directly or indirectly compete with you or your affiliates in the Territory;
>
> 7.1.2   Sell, demonstrate, promote solicit or support the sale of, support or supervise the implantation of or other use of, or otherwise have any involvement with, the sale, delivery, manufacture, research, development, design, marketing, monitoring, tracking, or any other business aspect of any Competitive Product in the Territory.
>
> 7.1.3   Sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise have any involvement with, the sale or use of any product,, which competes with any product I sold, solicited the sale of, delivered, manufactured, researched, developed, designed, marketed, monitored, or tracked, during the term of my employment, to or with any Customer upon whom I called during the last year of my employment.
>
> 7.1.4.   Influence or attempt to Influence any Customer, upon whom I called during the last year of my employment, to direct their business to any Competitor.
>
> 7.1.5.   Induce, attempt to induce, entice, or hire, or attempt to hire or employ any of your or your Affiliates' employees or representatives.
>
> 7.2. My promises in this Section 7 are of the essence of this agreement, and they will be construed as independent of any other parts of this agreement. Any claims or causes of action I may have against you, even if they arise under this agreement, will not be a defense to your enforcement of this Section 7.

Fox Decl. Ex. 1 at 31-32. "Territory" is defined as "the geographical area and accounts that I called upon, were assigned to me, worked in or with, or supported at any time during the

last twelve months of my employment" with St. Jude. <u>Id.</u> Ex. 1 at 30.

The Employment Agreement also contained provisions regarding choice of law, forum selection, and jurisdiction:

> 15.1 This Agreement will be interpreted under the laws of the State of Minnesota without regard to the principles of conflict of laws.
>
> 15.2 You and I agree that all actions or proceedings relating to or arising from this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota. I submit to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked. I understand that I am surrendering and expressly waiving the right to bring litigation against you outside the State of Minnesota.

Fox Decl. Ex. 1 at 34.

On February 27, 2012, Woodstock left St. Jude and accepted a position with Biotronik. Shortly thereafter, five additional employees announced that they were resigning from St. Jude and accepting employment with Biotronik under guaranteed-compensation contracts. Subsequently, Biotronik provided St. Jude with a list of accounts (the List) subject to Woodstock's Post-Termination Obligations.

St. Jude disputes the accuracy of the List and asserts that additional accounts are subject to Woodstock's Post-Termination Obligations. Specifically, St. Jude contends that Woodstock's

non-solicitation restrictions apply in four states not identified in the List.[1]

After the parties could not resolve their disagreement over the List, plaintiffs filed suit in Circuit Court for Clackamas County seeking a declaration that Woodstock's "Post-Termination Obligations relating to noncompetition . . . are as described in the List." Compl. at 4.

St. Jude removed the case to federal court based on diversity jurisdiction. Plaintiffs move to remand the case for lack of subject matter jurisdiction, and St. Jude moves to dismiss or transfer this action to the District of Minnesota pursuant to the forum selection clause in Woodstock's Employment Agreement.[2]

## DISCUSSION

### A. Subject Matter Jurisdiction

A party asserting diversity jurisdiction must allege complete diversity of citizenship between the parties and an

---

[1] The parties initially disputed Woodstock's ability to solicit in six states. Plaintiffs have since conceded that two states are within Woodstock's Post-Termination Obligations. See Def.'s Reply at 11, n. 2.

[2] On March 27, 2012, St. Jude filed suit against Biotronik and several former St. Jude employees, including Woodstock, alleging violations of restrictive covenants contained in the relevant Employment Agreements. On May 29, 2012, St. Jude amended the complaint and added another former employee as a defendant. The Minnesota state court recently denied Biotronik's motions to stay and granted St. Jude's motions for temporary injunctive relief. Notice of Filing in Related Case (doc. 29) Ex. A.

amount in controversy of at least $75,000. 28 U.S.C. § 1332(a); <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996) (discussing requirements of diversity to establish subject matter jurisdiction). Here, the parties are of diverse citizenship, and the only issue is the amount in controversy.

To warrant dismissal or remand, "'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" <u>Budget Rent-A-Car Inc. v. Higashiguchi</u>, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)). "Under this 'legal certainty' standard, the federal court has subject matter jurisdiction unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." <u>Travelers Prop. Cas. Co. of Am. v. Zurich Am. Ins. Co.</u>, 2012 WL 3042993, at *1 (D. Ariz. July 25, 2012) (internal quotation marks and citation omitted).

On the face of plaintiffs' complaint, they do not claim damages or monies owed by St. Jude. Rather, plaintiffs seek a declaration that Woodstock's Post-Termination Obligations are reflected accurately in the List provided to St. Jude. Stated another way, plaintiffs seek a declaration that Woodstock may solicit accounts within the disputed geographical regions in accordance with the Post-Termination Obligations of his Employment Agreement.

7 - OPINION AND ORDER

When declaratory relief is sought, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). St. Jude bears the burden of establishing by a preponderance of the evidence that the value in this case exceeds $75,000. Cohn v. Petsmart, Inc., 281 F.3d 837, 839 (9th Cir. 2002) ("To support removal based on diversity jurisdiction, [the defendant] has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000."). A court may consider supplemental evidence provided by the removing defendant, even if such evidence was not included in the removal notice. Id. at 840.

Contrary to plaintiffs' assertion, the object of the litigation is not the accuracy of the List or the terms of the Settlement Agreement between Biotronik and St. Jude. Rather, the object of the litigation is Woodstock's ability to solicit St. Jude accounts in the disputed geographical areas. See Hunt, 432 U.S. at 347 (finding that the object of the litigation was "the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute" and that "[t]he value of that right is measured by the losses that will follow from the statute's enforcement"); cf. Davis v. Advanced Care Tech., Inc., 2007 WL 1302736, at *2 (E.D. Cal. May 02, 2007)

8 - OPINION AND ORDER

("Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy.").

St. Jude argues that in determining the value of Woodstock's solicitation of accounts, the court may look to the value of the disputed accounts, sales revenues, and Woodstock's compensation, and that based on such evidence, this case easily meets the threshold amount. See Mahoney v. Depuy Orthopaedics, Inc., 2007 WL 3341389, at *5-6 (E.D. Cal. Nov. 8, 2007) (in action seeking to prohibit enforcement of non-competition clause, court looked to the plaintiff's compensation and sales revenue to determine amount in controversy); see also Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1172-73 (C.D. Cal. 2008) (accord); Basicomputer Corp. v. Scott, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991), aff'd 973 F.2d 507 (6th Cir. 1992) (in action seeking enforcement of non-competition covenants, court looked to commission statements, profits from sales revenue, and estimated lost revenue to determine the amount in controversy).

For example, St. Jude emphasizes that Woodstock was one of four Division Vice Presidents and was responsible for the marketing and sale of St. Jude's CRM, atrial fibrillation, and cardiovascular products in the North Division. St. Jude maintains that Woodstock also "had access to highly propriety

key account information, marketing and sales data and strategies." Def.'s Mem. in Opp'n to Remand at 6. St. Jude's CRM devices cost approximately $3,400 to $18,000 each, and annual CRM sales revenues in the four disputed states totaled millions of dollars at the time Woodstock left his employment with St. Jude. See Arancio Decl. at 2; Selskey Decl. at 2. Thus, St. Jude maintains that Woodstock's ability to solicit St. Jude accounts within the disputed areas could result in losses of sales revenue for St. Jude, and gains in revenue for Biotronik, that far exceed the jurisdictional amount. Further, St. Jude emphasizes that Woodstock's compensation package with St. Jude totaled over $1,500,000, providing additional evidence of the value of Woodstock's services and ability to solicit the disputed accounts. See Hawks Decl. at 2.

Plaintiffs argue that St. Jude's assertions regarding the amount in controversy are conclusory and speculative. Plaintiffs maintain that St. Jude presents no evidence to establish a direct link between Woodstock's ability to solicit the disputed accounts and the potential losses to St. Jude. Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007) (a court cannot base jurisdiction on a defendant's "speculation and conjecture"); Biotronik v. ELA Med., Inc., Case No. BC 357665 at 3 (C.D. Cal. Nov. 21, 2006) (finding that defendant "failed to show a direct link between its projected loss of revenue and

non-enforcement of the Agreement").[3] Plaintiffs further contend that a declaration regarding the accuracy of the List results in no "pecuniary result" to either party. See In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.").

Importantly, St. Jude need only show by a preponderance of the evidence that the value of Woodstock's ability to solicit the disputed accounts exceeds $75,000. Cohn, 281 F.3d at 839. Plaintiffs do not dispute that Woodstock received a very high level of compensation in exchange for his services and his acceptance of the Post-Termination Obligations, which were the "essence" of Woodstock's Employment Agreement with St. Jude. Fox Decl. Ex. 1 at 32. While evidence of Woodstock's total compensation may not establish a specific dollar value for his ability to solicit the disputed accounts, such evidence renders the court hard-pressed to find that Woodstock's ability to solicit accounts in four states is valued at less than $75,000

---

[3] Plaintiffs and St. Jude also cite Judge Simon's ruling in Biotronik, Inc. v. Medtronic USA, Inc., 840 F. Supp. 2d 1251 (D. Or. Jan, 4, 2012) to support their respective arguments. However, that case did not involve a claim asserted by a former employee to resolve the scope of existing non-competition obligations. Thus, while informative, I do not find the case particularly supportive of the parties' positions in this case.

by Biotronik or by Woodstock himself. See Luna, 575 F. Supp. 2d at 1172-73; Mahoney, 2007 WL 3341389, at *5-6.

Further, a declaration in plaintiffs' favor would allow Woodstock to solicit accounts in the four disputed states, resulting in potential sales revenue to Biotronik and potential sales losses to St. Jude – revenues and losses that easily exceed the jurisdictional amount given the value of the CRM devices and the amount of sales revenue at stake. Mahoney, 2007 WL 3341389, at *5-6; Davis, 2007 WL 1302736, at *1-2. Again, plaintiffs do not dispute that the sales revenue from the disputed accounts extends into the millions of dollars. Thus, I cannot find to a "legal certainty" that the amount in controversy is less than $75,000.

In sum, I find that St. Jude has established by a preponderance of the evidence that the value of Woodstock's ability to solicit the disputed accounts, and the potential gains and losses resulting from that ability, exceed the jurisdictional threshold of $75,000. Therefore, the motion to remand is denied.

B. Forum Selection Clause and Venue

St. Jude moves for dismissal or transfer of this action based on the forum selection clause contained in Woodstock's Employment Agreement with St. Jude. The forum selection clause unambiguously provides that any action brought by Woodstock

"relating to or arising from this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota." Fox Decl. Ex. 1 at 34.

In the Ninth Circuit, forum selection clauses are deemed "presumptively valid" and "should be honored 'absent some compelling and countervailing reason.'" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 404 U.S. 1, 12 (1972)). A forum selection clause generally is upheld unless:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (internal quotation marks and citations omitted). "The party challenging the clause bears a 'heavy burden of proof.'" Murphy, 362 F.3d at 1140 (quoting M/S Bremen, 407 U.S. at 17).

Plaintiffs do not argue that the forum selection provision resulted from fraud or undue influence. Rather, plaintiffs contend that the forum selection clause does not apply because the declaratory relief sought implicates only the accuracy of the List pursuant to the terms of the Settlement Agreement and informal agreement between Biotronik and St. Jude. Accordingly,

13 - OPINION AND ORDER

plaintiffs argue that this dispute does not involve Woodstock's obligations under the Employment Agreement. I disagree.

Granted, the parties dispute the accuracy of the List, which Biotronik purportedly provided in accordance with the terms of the Settlement Agreement between Biotronik and St. Jude. However, the crux of this case is not whether Biotronik complied with the Settlement Agreement but whether Woodstock may solicit accounts in certain states in accordance with his Post-Termination Obligations set forth in the Employment Agreement. Indeed, in support of their motion for remand, plaintiffs specifically assert that this case "focuses . . . on the scope of Woodstock's post-termination obligations" and seeks a declaration "that Woodstock is properly performing all of his enforceable post-termination obligations to St. Jude." Pls.' Reply Mem. at 2, 8. Thus, contrary to plaintiffs' assertions in opposing dismissal, the court must analyze whether Woodstock's solicitation of disputed accounts complies with his Post-Termination Obligations. See Pls.' Mem. in Opp'n to Dismiss/Transfer at 7.

Plaintiffs also argue that Biotronik cannot be bound by the forum selection clause because it was not a party to the Employment Agreement. However, the Ninth Circuit has ruled that a forum selection clause may be enforced against a non-party when the conduct of the non-party is "closely related to the

contractual relationship" between the signatory parties. Holland Am. Line, Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007) (citing Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509 (9th Cir. 1988)). Here, Biotronik's claim arises from the Employment Agreement between Woodstock and St. Jude and is therefore "closely related" to that contractual relationship. Absent the Employment Agreement, Biotronik would have no need for a declaration that the List reflects Woodstock's Post-Termination Obligations.

Accordingly, I find that plaintiffs are bound by the forum selection clause in Woodstock's Employment Agreement, and that venue is improper in this District. Rather than transfer this case, I find dismissal appropriate in light of the pending state court action in Minnesota.

## CONCLUSION

Plaintiffs' Motion to Remand (doc. 4) is DENIED, and defendant's Motion to Dismiss and Alternative Motion to Transfer (doc. 8) is GRANTED. This action is DISMISSED without prejudice. IT IS SO ORDERED.

Dated this 5th day of Aug, 2012.

_____
Ann Aiken
United States District Judge